# In re Bozena ZMIJEWSKA, Respondent

File A70 576 279 - New York

*Decided February 21, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The Board of Immigration Appeals lacks authority to apply an "exceptional circumstances" or other general equitable exception to the penalty provisions for failure to depart within the time period afforded for voluntary departure under section 240B(d)(1) of the Immigration and Nationality Act, 8 U.S.C.A. § 1229c(d)(1) (West Supp. 2006).

(2) An alien has not voluntarily failed to depart the United States under section 240B(d)(1) of the Act when the alien, through no fault of his or her own, was unaware of the voluntary departure order or was physically unable to depart within the time granted.

FOR RESPONDENT: Ruchi Thaker, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Michael Horowitz, Assistant Chief Counsel

BEFORE: Board Panel: HURWITZ, Acting Vice Chairman; HOLMES and GRANT, Board Members.

GRANT, Board Member:

The United States Court of Appeals for the Second Circuit has remanded this case with a request that we clarify whether, under section 240B of the Immigration and Nationality Act, 8 U.S.C. § 1229c (2000), "Congress intended to permit courts, in the exercise of their equitable discretion, to grant exceptions to the 10-year ineligibility period imposed as a penalty for failure to comply with voluntary departure orders." *Zmijewska v. Gonzales*, 426 F.3d 99, 101 (2d Cir. 2005).

The court further requested that we reconsider the respondent's claims "in light of the Government's revelation at oral argument that [her] voluntary departure deadline was in fact November 8, 2002, rather than November 9, 2002, and therefore that [her] Board-accredited representative had not informed her of the existence of the BIA's voluntary departure order by the time her departure deadline passed." *Id.* at 100-01.

As discussed below, Congress has provided certain exceptions to the penalties for overstaying a period of voluntary departure. The statute now limits application of the penalty provisions to situations in which a respondent

"*voluntarily* fails to depart the United States within the time period specified." Section 240B(d)(1) of the Act, 8 U.S.C.A. § 1229c(d)(1) (West Supp. 2006) (emphasis added). Thus, assuming the truth of the respondent's allegations regarding her accredited representative's delay in informing her of our voluntary departure order, we find that the respondent did not voluntarily fail to depart within the period for voluntary departure. We will therefore vacate our prior decision denying the respondent's motions to reopen and reconsider, grant her motion to reopen to apply for adjustment of status, and remand the record to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent entered the United States in July 1988 and remained beyond the 6 months authorized by her visitor's visa. The Immigration and Naturalization Service ("INS"), now the Department of Homeland Security ("DHS"), initiated removal proceedings in September 1999.

Assisted by an accredited representative, the respondent conceded in Immigration Court that she was subject to removal for staying beyond the period authorized by her nonimmigrant visa. In a decision dated June 13, 2000, the Immigration Judge pretermitted her application for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2000), for lack of a qualifying relative. In addition, because the respondent's pending request for a labor certification had not yet been approved, the Immigration Judge found her ineligible for adjustment of status and any other relief from removal other than voluntary departure. The Immigration Judge issued an order granting the respondent 60 days for voluntary departure from the United States, with an alternate order of removal to Poland. The Immigration Judge also instructed the respondent that if she failed to depart within the time afforded, she would be barred from relief from removal "unless there were exceptional circumstances beyond [her] control as to why [she] didn't comply with that order of voluntary departure such as being very sick or someone dying in [her] family or some other type of exceptional circumstance."

The respondent timely appealed the Immigration Judge's pretermission of her request for cancellation of removal. On October 9, 2002, we summarily dismissed the respondent's appeal and granted her 30 days for voluntary departure.

On January 7, 2003, after learning that her appeal had been dismissed and obtaining new counsel, the respondent filed a motion to reopen alleging ineffective assistance by her former representative for failing to seek a remand for adjustment of status while her appeal was pending with the Board and for failing to notify her of the Board's decision until after the period we granted her for voluntary departure had passed. The respondent attached to her motion to reopen an approved labor certification and an approved employment

visa petition. The relevant Visa Bulletins indicate that visas with the respondent's priority date were available for the respondent's employment category in March 2002.

On April 29, 2003, we denied the motion to reopen. We found that the motion was untimely and, alternatively, that the respondent, as a consequence of overstaying our grant of voluntary departure, was ineligible for adjustment of status under the 10-year bar in section 240B of the Act. We also rejected the respondent's claim that "exceptional circumstances" excused her from the 10-year bar, finding that although such an exception was included in former section 242B of the Act, 8 U.S.C. § 1252b (1994), a respondent in removal proceedings instituted on or after April 1, 1997, is subject to the terms of section 240B which, unlike former section 242B, does not contain an "exceptional circumstances" exception for failing to comply with a voluntary departure order.

The respondent then filed a timely motion for reconsideration, pointing out that we had erred in finding that the motion to reopen was untimely and requesting that we recognize an exception to the voluntary departure penalty when failure to depart within the time provided is the result of ineffective assistance of counsel. On September 26, 2003, we issued a decision acknowledging that the motion to reopen had been timely filed but denying reconsideration on the basis that "[t]he prior decision found that under section 240B of the Immigration and Nationality Act, 8 U.S.C. § 1229c, the respondent had not shown 'exceptional circumstances' for her failure to comply with the voluntary departure order."

The respondent appealed both the denial of the motion to reopen and the denial of the motion to reconsider to the Second Circuit. In its remand to the Board, the court framed the issue as follows:

> The question presented is whether, in light of 8 U.S.C. § 1229c, [the respondent's] failure to comply with a voluntary departure order renders her statutorily ineligible to receive an adjustment of status arising out of an employment offer, *see* 8 U.S.C. § 1255(a), or whether [she] may instead seek equitable relief from the provisions of 8 U.S.C. § 1229c(d) in the extraordinary circumstances presented here–namely, where: (1) [she] relied on erroneous representations of an immigration agent advising her not to seek adjustment of status after receiving a labor certification but prior to the BIA's order of voluntary departure; (2) [her] Board-accredited representative failed to notify her of the existence of the BIA's voluntary removal order until the day after she was required to depart the United States; and (3) an Immigration Judge ("IJ") informed (or misinformed) [the respondent] on the record that even if she failed to depart voluntarily in accordance with a BIA order, she still could avoid becoming statutorily ineligible for further relief by demonstrating that "there were exceptional circumstances beyond [her] control."

*Zmijewska v. Gonzales*, *supra*, at 101 (footnote omitted).

## II. ANALYSIS

### A. Statutory Language

We begin with the statutory language of the penalty provisions for failing to depart within the time afforded for voluntary departure. Penalties for failing to depart pursuant to a grant of voluntary departure were first imposed in 1990 with the enactment of section 545(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061, 5064 (effective Nov. 29, 1990). The statute, which was codified at former section 242B(e)(2)(A) of the Act, provided, in relevant part:

> [A]ny alien . . . who remains in the United States after the scheduled date of departure, *other than because of exceptional circumstances*, shall not be eligible for relief described in paragraph (5) [including adjustment of status] for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

(Emphasis added.) The initial penalty provision thus contained an "exceptional circumstances" exception for failing to depart within the allotted time. The term "exceptional circumstances" was defined to include "exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." Former section 242B(f)(2) of the Act. The statute also required written notice in English and Spanish and oral notice in a language the alien understands of the consequences of failing to depart within the time afforded, other than because of exceptional circumstances. Former section 242B(e)(2)(B) of the Act.

In 1996, Congress amended the penalty provision for failure to depart pursuant to a grant of voluntary departure in a number of ways. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, § 304(a)(3), 110 Stat. 3009-546, 3009-587, 3009-596, ("IIRIRA"). Most significantly, the IIRIRA eliminated the "exceptional circumstances" exception. It also added a new clause specifying that the penalties apply to an alien who "fails voluntarily to depart."[1] *Id*. § 304(a)(3), 110 Stat. at 3009-597. The newly enacted section of the statute regarding penalties for failure to depart provided as follows:

> If an alien is permitted to depart voluntarily under this section and *fails voluntarily to depart* the United States within the time period specified, the alien shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and be ineligible for a period of 10 years for any further relief under this section and sections 240A,

---

[1] The IIRIRA also increased the period of ineligibility for the specified forms of relief from removal from 5 years to 10 years, added a bond requirement, and eliminated the requirement of oral notice of the consequences of failing to depart within the period for voluntary departure.

245, 248, and 249.  The order permitting the alien to depart voluntarily shall inform the alien of the penalties under this subsection.

Section 240B(d) of the Act, 8 U.S.C. § 1229c(d) (2000) (emphasis added).  We have never directly addressed in a precedent decision the meaning of the phrase "fails voluntarily to depart the United States" contained in section 240B(d).

In January 2006, after the Second Circuit remanded this case, Congress amended section 240B(d) of the Act to make two changes relevant to the voluntary departure penalty provision.  *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 812, 119 Stat. 2960, 3057 (enacted Jan. 5, 2006) ("VAWA").  Section 240B(d) of the Act now provides as follows:

Civil Penalty for Failure to Depart
　(1) In General
Subject to paragraph (2), if an alien is permitted to depart voluntarily under this section and *voluntarily fails to depart* the United States within the time period specified, the alien —
　　(A) shall be subject to a civil penalty of not less than $1,000 and not more than $5,000; and
　　(B) shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 240A, 245, 248, and 249.
　*(2) Application of VAWA Protections*
*The restrictions on relief under paragraph (1) shall not apply to relief under section 240A or 245 on the basis of a petition filed by a VAWA self-petitioner, or a petition filed under section 240A(b)(2), or under section 244(a)(3) (as in effect prior to March 31, 1977), if the extreme cruelty or battery was at least one central reason for the alien's overstaying the grant of voluntary departure.*
　(3) Notice of Penalties
　The order permitting an alien to depart voluntarily shall inform the alien of the penalties under this subsection.

In enacting the 2006 amendments, Congress recognized that some VAWA applicants may have overstayed a period of voluntary departure for reasons that justify an exception to the penalty provisions.  Notably, the VAWA exception is limited to applicants who demonstrate that extreme cruelty or battery was a central reason for overstaying the grant of voluntary departure. Congress also changed the wording of the introductory clause of section 240B(d) from "fails voluntarily to depart" to "voluntarily fails to depart."  This change in wording clarifies that the phrase was not intended to apply to every alien who failed to depart within the voluntary departure period but was meant to limit the penalties to only those aliens whose failure to depart was voluntary.

B.  Equitable Exceptions to the Voluntary Departure Penalty Provisions

Before reaching the question whether the respondent in this case "voluntarily" failed to depart, we must first address the issue presented on remand, i.e., whether courts may exercise equitable discretion to grant exceptions to the penalty provisions of section 240B(d).  We understand that the court's request requires us to consider whether the statute may be interpreted to afford agency and court authority to recognize equitable exceptions, in addition to the exceptions spelled out in the statute.  For the reasons specified below, we find that Congress has not given the Board or the courts authority to recognize equitable exceptions to the section 240B(d) bar beyond those specifically provided in the voluntary departure provisions.

The question of equitable exceptions to the voluntary departure penalties involves considerations somewhat different from those relevant to the question of equitable exceptions to statutes of limitations.  *See Iavorski v. U.S. INS*, 232 F.3d 124, 129 (2d Cir. 2000).  Unlike a statute of limitations, the voluntary departure grant involves a quid pro quo arrangement between an alien and the Government of the United States.  *Banda-Ortiz v. Gonzales*, 445 F.3d 387, 389 (5th Cir. 2006) ("Voluntary departure is the result of an agreed-upon exchange of benefits between an alien and the Government.")  In return for departing within the time afforded for voluntary departure, an alien avoids certain adverse consequences of a removal order.  *See, e.g.*, section 212(a)(9)(A)(ii) of the Act, 8 U.S.C. § 1182(a)(9)(A)(ii) (2000) (rendering inadmissible for 10 years an alien who has been ordered removed from the United States.)  The voluntary departure agreement comes with warnings of the consequences of failing to depart within the time granted.[2]  Therefore, exceptions to the penalty provisions, unlike exceptions to a statute of limitation, are included in the statutory framework setting forth the terms of the agreement.

In the original version of the statute, Congress afforded a rather broad and open-ended equitable exception to the penalty provisions for aliens who could demonstrate "exceptional circumstances," which was defined to include "serious illness" and other "compelling circumstances."  *See, e.g.*, *Matter of Grijalva*, 21 I&N Dec. 472 (BIA 1996) (finding that ineffective assistance of counsel may amount to "exceptional circumstances" in the context of a motion to reopen an in absentia removal order).

---

[2] The statute provides that the order permitting an alien to depart voluntarily "shall inform the alien of the penalties under this subsection."  Section 240B(d)(3) of the Act.  There is no dispute in this case that the order of voluntary departure provided notice of the consequences of failing to voluntarily depart.  Nor is there any question in this case concerning the posting of a voluntary departure bond.  *See Matter of Diaz-Ruacho*, 24 I&N Dec. 47 (BIA 2006) (holding that an alien who fails to post the voluntary departure bond is not subject to penalties for failure to depart within the time specified for voluntary departure).

The congressional repeal of the "exceptional circumstances" exception to the voluntary departure penalty soon after our decision in *Matter of Grijalva*, *supra*, and its replacement with a "voluntariness" test strongly suggest that Congress did not intend to allow the Board and the courts to create and apply a set of equitable exceptions that would amount to a substitute version of the repealed "exceptional circumstances" exception. Notably, at the same time that Congress repealed the "exceptional circumstances" exception for voluntary departure penalties, it left intact the same exception for rescission of in absentia orders of removal for failure to appear. *See* section 240(b)(5)(C) of the Act, 8 U.S.C. § 1229a(b)(5)(C) (2000). Additionally, the wording of the recently enacted VAWA exception, which requires extreme cruelty or battery to be "a central reason" for a VAWA applicant's failure to depart, indicates that Congress intended to limit the exceptions to the penalties for failure to depart to those situations specifically described in the statute, i.e., the "voluntariness" provision and the VAWA exception.

Given the contractual nature of the voluntary departure agreement, the specificity of the exceptions to the penalty provision now provided by Congress, and the amendments to the statute, most particularly the repeal of the more general "exceptional circumstances" exception, we find that Congress intended to foreclose the Board and the courts from applying an open-ended equitable exception to the penalties for failing to depart within the time for voluntary departure.[3]

## C. Application of the "Voluntariness" Exception

We now turn to the question whether the respondent "voluntarily" failed to depart within the period afforded for voluntary departure. The term "voluntarily" ordinarily refers to conduct that is "brought about of one's own accord or by free choice." *The Random House Dictionary of the English Language* 1600 (unabridged ed. 1973). Congress has used the phrase "voluntarily fails" in a number of provisions. *See, e.g.*, 10 U.S.C.A. § 2192a(e) (West Supp. 2006) (a participant who "voluntarily fails" to complete a Department of Defense education program shall provide a refund to the United States in an appropriate amount); 20 U.S.C.A. § 1927(a)(3) (West 2005) (an individual who "voluntarily fails" to complete a term of service with the Capitol police must repay recruitment and relocation bonus

---

[3] Some courts have ruled that a timely motion to reopen filed before the expiration of a period of voluntary departure tolls the running of the voluntary departure period until the agency rules on the motion. *See, e.g.*, *Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005) (reaching this result after considering the motion to reopen provisions of section 240(c)(7) of the Act, 8 U.S.C. § 1229a(c)(7) (2000), in conjunction with the voluntary departure provisions of section 240B(d)); *cf. Dekoladenu v. Gonzales*, 459 F.3d 500 (4th Cir. 2006) (finding that the plain language of section 240B(d) precludes tolling of the voluntary departure period upon the filing of a motion to reopen).

on a pro rata basis); 22 U.S.C. § 3657(c)(2) (2000) (an employee who "voluntarily fails" to complete the required period of employment must repay recruitment and retention bonuses).  In each instance, the phrase "voluntarily fails" refers to a failure to complete an act or requirement within the actor's control.  *See Favreau v. United States*, 317 F.3d 1346 (D.C. Cir. 2002) (approving recoupment of enlistment bonuses when service members were unable to meet obesity and physical fitness requirements by examining the voluntariness of the underlying conduct of the employee, rather than the voluntariness of termination).  Under the terms of section 240B(d) of the Act, a respondent who, through no fault of her own, remains unaware of the grant of voluntary departure until after the period for voluntary departure has expired cannot be said to have "voluntarily" failed to depart within the period of voluntary departure.

We emphasize that the "voluntariness" exception is not a substitute for the repealed "exceptional circumstances" exception.  It is a much narrower exception limited to situations in which an alien, through no fault of his or her own, is unaware of the voluntary departure order or is physically unable to depart.  It would not include situations in which departure within the period granted would involve exceptional hardships to the alien or close family members.  Nor would lack of funds for departure be considered an involuntary failure to depart.

The respondent claims that she did not depart the United States within the 30-day period for voluntary departure because her accredited representative failed to inform her of our October 9, 2002, order until after the expiration of her voluntary departure period.  When she learned of the order on day 31, she also learned that she had become eligible for adjustment of status during the course of her appeal and could have sought a remand for adjustment of status several months before we issued our decision dismissing her appeal and granting voluntary departure.

Ordinarily, a claim of ineffective assistance of counsel must be supported by (1) an affidavit setting out the agreement entered into with counsel, (2) proof that notice of the allegations and an opportunity to respond has been provided to counsel whose representation was allegedly ineffective, and (3) the filing of a complaint with appropriate disciplinary authorities or an explanation for the failure to file a complaint.  *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1998), *aff'd*, 857 F.2d 10 (1st Cir. 1988).  In this case, the respondent was represented by an accredited representative, not an attorney.  *See* 8 C.F.R. §§ 1292.1(a)(4), 1292.2(d) (2006).  During the course of her appeal, the respondent submitted a copy of a formal complaint provided to her accredited representative and apparently offered him an opportunity to respond.  Although we have not yet decided the question whether the *Lozada* requirements should be strictly applied to an accredited representative, we find

that the steps taken by the respondent in this case satisfy the concerns underlying the *Lozada* requirements.[4]

Assuming the truth of the respondent's allegations regarding her accredited representative's conduct, we find that she has shown that she did not "voluntarily" fail to depart within the period of voluntary departure granted by the Board.[5] In addition, the respondent in this case was erroneously instructed by the Immigration Judge that the penalty provisions would not apply in the event that she could demonstrate exceptional circumstances for having failed to depart within the time afforded.[6] At the time the respondent learned that she had overstayed the 30-day period of voluntary departure granted by the Board, she could reasonably have believed that the ineffective assistance of her accredited representative, and her apparent eligibility for adjustment of status during the course of the appeal, could satisfy an exceptional circumstances exception. *See, e.g.*, *Matter of Grijalva*, *supra* (holding that ineffective assistance of counsel that causes an alien to fail to appear for a hearing may amount to "exceptional circumstances" within the meaning of former section 242B(f)(2) of the Act).

Finally, we find that the respondent acted with due diligence in locating new counsel and filing a timely motion to reopen proceedings within 2 months of learning of our order dismissing her appeal and of her eligibility for adjustment of status in removal proceedings. We will therefore vacate our prior decisions denying the respondent's motion to reopen and motion to reconsider, grant the motion to reopen, and remand the proceedings to the Immigration Judge for further proceedings.

**ORDER:** The October 9, 2002, and April 29, 2003, decisions of the Board are vacated.

---

[4] Had the respondent been represented by an attorney, we would have expected compliance with the third prong of *Matter of Lozada*, *supra*, i.e., the filing of a complaint with the appropriate disciplinary authorities or an explanation why such a complaint was not filed.

[5] Ultimately, we leave the issue of the truth of the respondent's allegations regarding her accredited representative's conduct to the Immigration Judge on remand.

[6] At the hearing, the Immigration Judge provided the respondent with the following explanation of her right to appeal to the Board and the consequences of failing to comply with the voluntary departure order:

> If an individual has a period of voluntary departure and does not leave by that date or the date given by the Appeals Board, then an alternate order of removal, in this case to Poland would go into effect. If you didn't leave under those circumstances, then you would be barred from reopening your case for 10 years to apply for any form of relief and if you are ultimately removed or deported from the United States, you'd also be barred for 10 years without obtaining a special waiver. All of that would happen unless there were exceptional circumstances beyond your control as to why you didn't comply with that order of voluntary departure such as being very sick or someone dying in your family or some other type of exceptional circumstance.

**FURTHER ORDER:** The respondent's motion to reopen is granted.

**FURTHER ORDER:** The proceedings are reopened and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.